UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PROBIOTECH, INC.,

                      Plaintiff,

v.                                                                          5:05-CV-1130
                                                                       (GTS/DEP)
ALLTECH, INC.,

                      Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

HARTER, SECREST & EMERY, LLP             PETER H. ABDELLA, ESQ.
  Counsel for Plaintiff                              JERAULD E. BRYDGES, ESQ.
1600 Bausch & Lomb Place
Rochester, NY 14604-2711

HANCOCK & ESTABROOK, LLP                JOHN G. POWERS, ESQ.
  Counsel for Defendant                           JAMES E. HUGHES, ESQ.
1500 AXA Tower I
Syracuse, NY 13221

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM DECISION and ORDER

      Currently pending before the Court in this breach-of-contract action filed by Probiotech, Inc. ("Plaintiff") against Alltech, Inc. ("Defendant") is Plaintiff's motion for partial summary judgment requesting that the Court decide the appropriate choice of law that governs the parties' dispute. (Dkt. No. 28.) For the reasons set out below, Plaintiff's motion is granted in part and denied in part.

I.      BACKGROUND

     A.      **Relevant Procedural History**

On August 17, 2005, Plaintiff filed an action against Defendant in New York State Supreme Court. (Dkt. No. 1, Part 1.) On September 8, 2005, Alltech, Inc. ("Defendant") removed that action to the Northern District of New York. (*Id.*) On May 31, 2006, Plaintiff filed an Amended Complaint. (Dkt. No. 19, Part 1.) Generally, in its Amended Complaint, Plaintiff asserts claims of breach of contract and tortious interference with prospective business relations against Defendant arising out of a terminated contractual relationship between the parties. (*Id.*)

On June 21, 2006, Defendant filed an Answer to Plaintiff's Amended Complaint, as well as five counterclaims. (Dkt. No. 24.) Generally, Defendant's counterclaims consist of two claims for breach of contract, a claim for account stated, a claim for a violation of the UCC, and a claim for *quantum meruit*; each claim arises out of the terminated contractual relationship between the parties. (*Id.*)

On November 10, 2006, Plaintiff filed a motion for partial summary judgment, requesting that the Court decide, as a matter of law, the applicable law that governs the parties' dispute. (Dkt. No. 28.) The parties have yet to complete discovery.

     B.      **Relevant Factual Background**

On April 2, 1990, the parties entered into a Distributor's Agreement ("Agreement") pursuant to which it was agreed, among other things, that (1) Plaintiff would be Defendant's exclusive distributor of Defendant's products in the province of Quebec, Canada, (2) Plaintiff would use its best efforts to promote and sell Defendant's products to all suitable purchasers, (3)

Plaintiff would not carry products "in direct competition" with Defendant's products, (4) Defendant would provide Plaintiff with written notice of price increases, (5) Defendant would use its best efforts to ensure that Plaintiff was adequately supplied with product, (6) the Agreement could be terminated by either party at any time upon giving the other party at least four months prior written notice, (7) the Agreement was deemed to be made under (and governed by) New York law, and (8) any dispute concerning the interpretation or execution of the Agreement was to be submitted to arbitration. (Dkt. No. 28, Part 7.)

On May 21, 1999, Defendant delivered to Plaintiff a letter purporting to terminate the Agreement upon four months' prior written notice effective September 30, 1999. (Dkt. No. 28, Part 8.) Despite delivering this letter, the parties continued to conduct business with each other. (*Compare* Dkt. No. 28, Part 12, at ¶ 12 *with* Dkt. No. 30, Part 2, at ¶ 11.) On April 7, 2003, Defendant delivered a second termination notice to Plaintiff, in which Defendant stated, *inter alia*, that although it had previously sent a termination letter to Plaintiff on May 21, 1999, "neither [Plaintiff] nor [Defendant] gave effect to this notice and [Plaintiff] continued to act as [Defendant's] distributor as if no notice had been given, on the same terms and conditions as prevailed under the Agreement." (Dkt. No. 28, Part 9.) The second termination notice further stated, "Therefore, we are now advising you again pursuant to section 16.3, that the Distributor Agreement as continued after September 30, 1999, will terminate on August 7, 2003 (the 'Notice Period')." (*Id.*)

    **C.**    **Plaintiff's Current Motion**

Plaintiff's motion for partial summary judgment requests that the Court decide, as a matter of law, whether this dispute is governed by the law of Quebec, New York, or Kentucky.

(Dkt. No. 28, Part 13.) Plaintiff argues that, although the Agreement expressly chose New York law to govern all disputes arising out of the Agreement, Quebec law should govern because (1) the Agreement was terminated on May 21, 1999, and therefore the parties cannot now be bound by its terms, and (2) Quebec has the most significant relationship to the transaction and the parties. (Dkt. No. 28, Part 13, at 13-19.) In response, Defendant offers the following alternative arguments: (1) Plaintiff's motion is premature because it asks the Court to decide a matter that involves disputed issues of fact without the benefit of full discovery; (2) based on the parties' conduct after May 21, 1999, the Agreement remained in full effect until its termination in August 2003, and therefore the Court must give deference to the Agreement's New York choice-of-law provision; (3) assuming that the May 21, 1999 notice of termination was effective (such that the Agreement terminated on September 30, 1999), it would not enure to Plaintiff's benefit for the Court to apply Quebec law under the circumstances because (pursuant to Defendant's calculations) Quebec law would require less than four months notice to terminate the parties' subsequent four-year relationship (i.e., between September 30, 1999 and August 7, 2003), which is no more notice than the contract required, and therefore there is no conflict of law (and thus no reason to apply anything other than New York law); and (4) if the Agreement was terminated, "the application of New York's 'significant contacts' choice of law analysis would accord great significance to the only declaration of the party's [sic] intent regarding choice of law which is as set forth in the Distributor's Agreement." (Dkt. No. 30, Part 13, at 1-4.)

## II. LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

For the sake of brevity, and because the parties to this action have demonstrated a sufficient understanding of the legal standard governing motions for summary judgment, the

Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga County Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### III.   ANALYSIS

#### A.   Breach-of-Contract Claim

##### 1.   Whether the Agreement Was Terminated on May 21, 1999

Plaintiff argues that the Agreement was terminated on May 21, 1999, and therefore the choice-of-law provision contained in the Agreement was not binding on the parties in April 2003.

"Frequently, a contract is implied where a written agreement expires but the parties continue to conduct themselves as if the prior agreement were still in place." *Millenium Expressions, Inc. v. Chauss Marketing, Ltd.*, 02-CV-7545, 2007 WL 950070, at *5 (S.D.N.Y. Mar. 30, 2007). "When an agreement expires by its terms, if, without more, the parties continue to perform as theretofore, an implication arises that they have mutually assented to a new contract containing the same provisions as the old." *Millenium Expressions, Inc.*, 2007 WL 950070, at *5 (citations omitted). Having said that, "if the circumstances create an inference that the parties did not intend to continue their relationship on the same terms, then no new contract will be implied." *Millenium Expressions, Inc.*, 2007 WL 950070, at *6 (citations omitted).

It is not clear from the current record whether, after September 30, 1999, the parties conducted themselves in full accord with the Agreement. As a result, and in the absence of full discovery, the Court is unable (and unwilling) to decide, as a matter of law, that the Agreement was terminated on May 21, 1999.

For these reasons, Plaintiff's motion for summary judgment is denied to the extent that it request that the Court rule that, as a matter of law, the parties' Agreement was terminated on May 21, 1999.

### 2.      Whether a New York Choice-of-Law Provision Was Reasonable

"A federal court in a diversity case must look to the choice of law rules of the state in which it sits to resolve conflict of law issues." *Tischmann v. ITT/Sheraton Corp.*, 882 F. Supp. 1358, 1366 (S.D.N.Y. 1995) (citations omitted). "Thus, the Court must examine New York's choice of law principles to determine [the law that applies to the parties' claims]." *Tischmann*, 882 F. Supp. at 1366.

"In determining the law that governs the contractual relationship between the parties, New York courts apply a 'paramount interest' test, under which the court must apply the law of the state with the 'greatest interest in the litigation.'" *Id*. (citing *Crescent Oil & Shipping Servs., Ltd. v. Phibro Energy, Inc*., 929 F.2d 49, 52 [2d Cir. 1991]). "In determining which state's interest is paramount, 'the facts or contacts which obtain significance . . . are those which relate to the purpose of the particular law in conflict.'" *Id*. (citing *Hutner v. Greene*, 734 F.2d 896, 899 [2d Cir. 1984]).

With respect to contract claims, there is "an exception to this general rule, where . . . the contract contains a choice of law clause, [in that] it is the general policy of New York to enforce the parties' choice." *LaGuardia Assoc. v. Holiday Hospitality Franchising, Inc*., 92 F. Supp.2d 119, 127 (E.D.N.Y. 2000) (citation omitted). "New York courts will, however, decline to enforce a contractual choice of law selection if (1) the law of the state selected does not have a reasonable relationship to the economic activity . . ., or (2) the state law chosen violates a fundamental public policy of New York . . . ." *LaGuardia Assoc.*, 92 F. Supp.2d at 127

(citations omitted). In addition, "New York law allows a court to disregard the parties' choice when the most significant contacts are in another state." *Cargill, Inc. v. Charles Kowsky Resources, Inc.*, 949 F.2d 51, 55 (2d Cir. 1991) (citation omitted); *see also Agricultural Ins. Co., Inc. v. Ace Hardware Corp.*, 98-CV-8708, 2003 WL 164272, at *5 (S.D.N.Y. Jan. 17, 2003) ("The New York Court of Appeals has addressed the 'substantial relationship' approach and held that while the parties' choice of law is to be given 'heavy weight,' the law of the state with the 'most significant contacts' is to be applied.") (citations omitted).

At this stage of the proceeding, even assuming that the Agreement was not terminated on May 21, 1999, "[t]he parties have failed to identify a sufficient 'reasonable relationship' between the[ir] [business relationship] and [New York] to warrant application of the Agreements' [New York] choice of law clause[]." *LaGuardia Assoc.*, 92 F. Supp.2d at 127 (citation omitted). In addition, it appears from the limited record before the Court that the most significant contacts are in Quebec, Canada. Having said that, in the absence of full discovery, the Court is unable (and unwilling) to decide, as a matter of law, that there is not a sufficient *reasonable relationship* between the parties' business relationship and New York such that the parties' mutual agreement that New York law would govern any disputes arising under the Agreement was unreasonable.

For these reasons, Plaintiff's motion for summary judgment is denied to the extent that it requests that the Court rule that the parties' mutual agreement that New York law would govern any disputes arising under the Agreement was unreasonable.

### B.     Tort Claim

With respect to claims sounding in tort, "New York courts adopt an 'interest analysis' test, requiring application of the law of the state with the greatest interest in the outcome of the litigation." *Tischmann*, 882 F. Supp. at 1366 (citation omitted). As a result, "[u]nder New York

law, a choice-of-law provision indicating that a contract will be governed by a certain body of law does not dispositively determine the law which will govern a tort claim arising incident to a contract." *Winter-Wolff Intern., Inc. v. Alcan Packaging Food and Tobacco Inc.*, 499 F. Supp.2d 233, 240 (E.D.N.Y. 2007) (citations omitted). Rather, "[g]enerally, tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract . . . ." *Winter-Wolff Intern., Inc.*, 499 F. Supp.2d at 240 (citation omitted). Indeed, "[a] choice of law provision will apply to tort claims incident to a contract [only] if the express language of the provision is 'sufficiently broad' as to 'encompass the entire relationship between the contracting parties.'" *Id*. (citation omitted) (noting that the Second Circuit's survey of New York cases in a previous decision "found that there were no reported New York state cases where a contractual choice-of-law clause was drafted broadly enough to reach tort claims.").

As in *Winter-Wolff*, the Court finds that "[t]he contract does not provide for the choice of law for any and all disputes with respect to the parties dealings and therefore does not apply to the tort claims." *Id*. (citing *Hughes v. LaSalle Bank*, 419 F. Supp.2d 605, 616 [S.D.N.Y. 2006]). Because "the tort claim is not covered by the choice of law provision in the contract, this Court must apply New York's interest analysis which gives controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Id*. (citation omitted). "The contacts of the parties and occurrences with each jurisdiction are thus factors to be considered in applying interest analysis, together with the policies underlying each jurisdiction's rules, the strength of the governmental interests embodied in these policies, and the extent to which these interests are implicated by the contacts." *Id*. (citation omitted).

"Where, as here, the parties are domiciled in different states and the issue is the standard governing the defendant's conduct, the place or location of the tort is determinative." *Id*. at 241 (citations omitted). "When the conduct occurs in one jurisdiction and injuries are suffered in another, the tort will be deemed to have occurred in the place where the last event necessary to render the tortfeasor liable occurred." *Id*. (citation omitted). "The last event necessary for the tort of tortious interference is that the plaintiff suffer damages." *Id*. (citation omitted). "In this case Plaintiff resides and does business in [Quebec] and [Quebec] is where it suffered injury." *Id*. As a result, the Court finds that Quebec has the greater interest in regulating this conduct and therefore the Court will apply Quebec law to Plaintiff's tort claim.

For these reasons, Plaintiff's motion for summary judgment is granted to the extent that it requests that the Court apply Quebec law to Plaintiff's tort claim.

**C.   Venue**

Based on the parties' motion papers, the following facts appear true: (1) the witnesses in this action are located only in Lexington, Kentucky, and Saint-Hyacinthe, Quebec; (2) Defendant is a resident of the Eastern District of Kentucky, and Plaintiff is a resident of Quebec; (3) the relevant documents in this action are located only in Lexington, Kentucky and Saint-Hyacinthe, Quebec; (4) the original contract was drafted and signed in Lexington, Kentucky; (5) that contract was either terminated or extended in Lexington, Kentucky and Saint-Hyacinthe, Quebec; (6) while some of the claims may be governed by New York law, the Eastern District of Kentucky is as familiar as this District with the law of Quebec and more familiar than this District with the law of Kentucky; (7) for the period of 2003 to 2008, the number of actions per judge, and the median time to disposition of civil cases, have been consistently and significantly

greater in this District than have been those in the Eastern District of Kentucky;[1] and (8) discovery has not begun in this case. Although the Court is mindful of the fact that, in the absence of "extraordinary circumstances," it should not raise *sua sponte* the issue of improper venue, *see Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371 (2d Cir. 1966), the Court finds such circumstances present here.

**ACCORDINGLY** it is

**ORDERED** that Plaintiff's motion for partial summary judgment (Dkt. No. 28) is **GRANTED** **in part** and **DENIED** **in part** as set forth in this Decision and Order; and it is further

**ORDERED** that counsel appear on **JANUARY 4, 2010 at 3:00 P.M.** in chambers for a pretrial conference in this action with the undersigned, at which counsel shall show cause as to why the Court should not *sua sponte* transfer this action to the U.S. District Court for the Eastern District of Kentucky.[2]

Dated: December 15, 2009
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

---

[1] *See* Administrative Office of the United States Courts, Federal Court Management Statistics, http://www.uscourts.gov/cgi-bin/cmsd2008.pl (last visited Nov. 12, 2009).

[2] In the event that the Court is satisfied that the Northern District of New York is the proper venue, the parties will be directed to commence discovery and deadlines will be set.